**Dwight Loren SMITH, 32156, Petitioner-Appellant,**

v.

**Hoyt C. CUPP, Superintendent, Oregon State Penitentiary, Respondent-Appellee.**

**No. 71–1952.**

United States Court of Appeals, Ninth Circuit.

Feb. 29, 1972.

Rehearing Denied April 6, 1972.

unused

Howard R. Lonergan (argued), Portland, Or., for petitioner-appellant.

Jim G. Russell, Asst. Atty. Gen. (argued), Salem, Or., for respondent-appellee.

Before CHAMBERS, HAMLEY and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge:

In 1967, Dwight Loren Smith was convicted in the state of Oregon of second-degree murder and sentenced to a term in the Oregon State Penitentiary not to exceed twenty-five years. The conviction was affirmed by the Court of Appeals of the State of Oregon on September 12, 1969.[1] Smith's petition to that court for rehearing was denied on November 5, 1969. A subsequent petition for review in the Oregon Supreme Court was also denied.

Smith then filed a petition for federal habeas corpus relief in the United States District Court. The court dismissed the petition in a memorandum opinion and order filed April 23, 1970. Smith appeals, presenting five arguments for reversal.

■ First, Smith argues, he was denied due process under Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199 (1967). Smith urges that the in-court identifications of him as the murderer were tainted by a prior showing of photographs to some eyewitnesses and by individual post-arrest confrontations between Smith and other eyewitnesses.

The district court ruled that the photographic identifications were not "so impermissibly suggestive as to give rise to a very substantial likelihood of irrep-arable misidentification" (Simmons, supra, at 390 U.S. 384, 88 S.Ct. 971), and that, considering the "totality of the circumstances" (Stovall, supra, at 388 U.S. 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199), neither the individual confrontations nor the photo-identification procedures deprived Smith of due process of law. Our review of the record persuades us that the district court was correct.

■ Smith's second argument is that the state trial court improperly refused to permit cross-examination to show to the jury that several eyewitnesses had previously identified persons other than Smith as the killer. Smith claims that the state court ruling denied him the constitutional right to confront witnesses.

The Oregon Court of Appeals explained, in its opinion, that the refusal to allow cross-examination was premised upon Smith's counsel's desire at trial to use certain police notebooks as the basis for his cross-examination to show that the witnesses had identified persons other than Smith. The state trial court ruled that the notebooks could not be used without first laying a foundation. The trial court told counsel, however, as the rulings were made, that the police officers who had made the notebooks could be required to testify concerning their notes, and that the complete statements of the witnesses recollected by the officers could then be used for impeachment. The procedure outlined by the trial court was not followed by Smith's counsel, however, and cross-examination based upon the notebooks was therefore not allowed. The Oregon Court of Appeals upheld that decision. State of Oregon v. Smith, footnote 1, supra, 458 P. 2d at 691. So did the district court in this habeas proceeding.

We conclude that the procedure outlined by the state trial court is not constitutionally vulnerable. It required only that Smith's counsel perform a very simple extra step to lay a proper foundation for the impeaching questions he

---

1. Reported as State of Oregon v. Smith, 1 Or.App. 153, 458 P.2d 687 (1969).

wished to ask.[2] Smith cannot now complain of the failure to follow that procedure. There was no denial of the right to confront witnesses.

■ Third, Smith contends, the state trial court improperly instructed the jury that witnesses are presumed to tell the truth, thus depriving him of due process.[3] Smith cites several cases which he claims stand for the proposition that such an instruction is improper as a matter of law. We have examined those cases, and while they generally take a disapproving view of such instructions, none of them goes so far as to indicate that the instruction given in the case at bar, standing alone, constitutes reversible error. In all those cases cited by Smith where convictions were reversed, some prejudicial circumstance in addition to the instruction forms the basis for reversal; and in Knapp v. United States, 316 F.2d 794 (5th Cir. 1963), the court states expressly that the use of such an instruction "was not error at all, much less plain error." 316 F.2d 795.

In view of the facts that Smith took the stand in his own behalf in the present case, and also presented witnesses to testify for him, the challenged instruction did not favor either party. See United States v. Boone, 401 F.2d 659 (3d Cir. 1968). We conclude that the instruction, in the context of this case, constitutes no ground for habeas corpus relief.

■ Smith's fourth contention is that the state trial court's refusal to allow post-verdict interrogation of the jurors for the purpose of discovering possible, but unspecified, jury misconduct deprived Smith of his constitutional rights.

The contention lacks merit. In the federal court system, it has recently been stated that neither a trial court nor an appellate court has the authority to inquire into the jury's decisional processes, even when information pertaining to the deliberations is volunteered by one of the jurors. Domeracki v. Humble Oil and Refining Co., 443 F.2d 1245, 1247 (3d Cir. 1971). Moreover, this court has held, in a federal case, that it is improper and unethical for lawyers to interview jurors to discover what was the course of deliberation of a trial jury. Northern Pacific Railway Co. v. Mely, 219 F.2d 199, 202 (9th Cir. 1954).

*Domeracki* and *Mely* are not specifically applicable to the present habeas corpus appeal which challenges state procedures. At the least, however, they indicate that there is no federal constitutional problem involved in the denial of a motion to interrogate jurors where, as here, there has been no specific claim of jury misconduct.

■ Finally, Smith claims that he was denied due process when, on his state appeal, the Oregon Court of Appeals determined that any error in the trial court's second-degree murder instruction was not prejudicial because Smith was not entitled to a second-degree instruction and, had such an instruction not been given "he would have been found guilty of first degree murder." 458 P.2d at 693. Smith insists that the jury conviction on the lesser included charge of second-degree murder necessarily implied acquittal on the first-degree charge. Therefore, he argues, it was a denial of due process for the state Court of Appeals to base its decision on the probability that he would have been convicted of first-de-

2. We note that Smith's counsel may have had good tactical reasons for not calling the officers, fearing that they would be hostile witnesses.

3. The court's instruction, in pertinent part, follows:
"Every witness is presumed to speak the truth. This presumption, however, may be overcome by the manner in which the witness testifies, by the character of the testimony, by evidence affecting the witness' character or motives or by contradictory evidence. You are the exclusive judges of the credibility of the witnesses . . . . "

gree murder if no second-degree instruction had been given.

The basis for this constitutional claim emerged when the Oregon Court of Appeals announced its decision. Yet, as Smith's counsel concedes by post-argument memorandum, Smith did not raise the issue in either his petition to that court for rehearing, or his petition for review to the Oregon Supreme Court. The point was advanced for the first time in the district court in this habeas proceeding. There was accordingly a failure to exhaust Smith's state remedies as to this matter and it would have been improper for the district court to deal with the question.[4]

It would likewise be improper for us to decide this question. See Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

The judgment of the district court dismissing the petition for habeas corpus is affirmed.

---

4. The district court did not decide this constitutional question.