**Thomas J. HARD, Plaintiff,**

v.

**BURLINGTON NORTHERN RAILROAD, Defendant.**

**No. CV 84–26–BU–CCL.**

United States District Court,
D. Montana,
Butte Division.

Oct. 11, 1985.

W.M. Hennessey, Hennessey Law Office, Butte, Mont., for plaintiff.

Charles C. Dearden, Burlington Northern Ry. Co., Law Dept., Billings, Mont., for defendant.

## OPINION AND ORDER

LOVELL, District Judge.

Plaintiff instituted this action under the Federal Employer's Liability Act, 45 U.S.C. § 51, *et seq.*, seeking damages for injuries allegedly resulting from a work-related accident. Trial was held and a special verdict returned by the jury, finding the negligence of both parties to be 50% and plaintiff's damages to be $10,000.00. Accordingly, the damages were reduced by 50% and judgment was entered on August 14, 1985, in favor of plaintiff in the amount of $5,000.00 plus interest and costs of suit.

Pursuant to Rule 59, Fed.R.Civ.P., plaintiff filed a timely motion for new trial on the issue of damages, or in the alternative on all issues, alleging three grounds in support thereof.

### 1. INADEQUATE DAMAGES

Plaintiff's first ground for a new trial is that the jury's award of $10,000.00 is grossly inadequate to compensate plaintiff for his injuries; he estimates the minimum amount of actual damages to be upwards of $190,000.

The source and extent of plaintiff's injuries were vigorously contested at trial. The theory of plaintiff's case was that he sustained injury to his arm, shoulder, neck

and back when he slipped and fell on a ramp where the non-skid surface was worn and deficient. Defendant alleged as affirmative defenses that plaintiff's injuries were the result of his own negligence, and that any injuries he sustained were caused by an unrelated accident. Evidence was introduced purporting to show that plaintiff fell from a swing and his back injury resulted from this separate incident.

█ A motion for new trial is directed to the sound discretion of the trial court and will not be granted "merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Fireman's Fund Ins. Co. v. Aalco Wrecking Co., Inc.*, 466 F.2d 179, 186 (8th Cir.1972), cert. den. 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973); 6A Moore's Fed.Prac. ¶ 59.05[5] at 59–47.

█ Before a court will set aside an award of damages as inadequate, the inadequacy must be patent and severe, such that leaving the verdict undisturbed would result in a miscarriage of justice. *Lang v. Birch Shipping Co.*, 523 F.Supp. 1112 (S.D. N.Y.1981); *Estes v. Southern Pac. Transp. Co.*, 598 F.2d 1195, 1200 (10th Cir.1979). There was substantial credible evidence from which the jury could conclude that plaintiff's injuries were not as disabling as he claimed, and that some of his injuries were the result of the unrelated accident. Assuming that defendant's version of the nature and extent of plaintiff's injuries was substantially accepted by the jury, the verdict comes well within the rule that the award be full and fair compensation for the damages suffered from the accident.

> Merely because the verdict may have been less than anticipated or hoped for by plaintiff is no more reason to set aside the verdict and grant a new trial than a verdict that may be substantially higher than expected by a defendant. Under our system of jury trials, litigants inevitably run the risk that the jury's determination of the amount of damages may vary substantially from [their] reasonable expectations.

*Hamm v. Consolidated Rail Corp.*, 582 F.Supp. 906, 910 (E.D.Pa.1983).

## 2. VERDICT AGAINST WEIGHT OF EVIDENCE

As his second ground for a new trial, plaintiff claims that the jury's verdict is clearly against the overwhelming medical evidence presented.

█ Even if there is evidence sufficient to support the verdict, the trial court should set it aside if it is contrary to the clear weight of the evidence. *Peacock v. Board of Regents*, 597 F.2d 163 (9th Cir. 1979), app. after remand, 694 F.2d 644; *Traver v. Meshriy*, 627 F.2d 934 (9th Cir. 1980). However, where the record reasonably supports the jury's verdict, and where it does not appear that the jury has reached a seriously erroneous result, a new trial is not warranted. *Handgards, Inc., v. Ethicon, Inc.*, 552 F.Supp. 820 (N.D.Cal.1982); *Frank v. Bloom*, 634 F.2d 1245 (10th Cir. 1980).

█ I find the evidence sufficient to support the verdict and reject plaintiff's contention that it is against the weight of the evidence. It is within the province of the jury to weigh conflicting evidence and to evaluate witness credibility. *Carter v. Duncan-Huggins, Ltd.*, 727 F.2d 1225 (D.C.Cir.1984). Short of taking over the function of the jury, I cannot find in this case that the evidence weighs so clearly in plaintiff's favor as to mandate a new trial. There was conflicting evidence presented to the jury, and the court will not second-guess its determination in the absence of clear error.

## 3. JURY MISCONDUCT

The third and final ground upon which plaintiff bases his motion is that the jury's decision was prejudiced by the improper disclosure of information by one of the jurors. In support of this contention, plaintiff has submitted affidavits from three jurors which purport to establish that one of their members had been an employee of the defendant and disclosed to the jury his

knowledge of the manner in which defendant handles employees' accident claims. Plaintiff contends that the juror "improperly influenced" the jury with representations of fact which were not in evidence. Plaintiff further contends that the juror's failure to disclose his former employment relationship with defendant during voir dire examination constitutes misconduct for which a new trial must be granted.

The first question raised is whether the juror failed to give truthful answers to the Court's voir dire questions and, if so, what is the effect of such failure.

■ I have reviewed the voir dire questions and answers.* It cannot be said that the juror willfully failed to disclose he had been employed by Defendant. Having heard the answers of the other jurors to the Court's questions, the juror probably surmised that he could provide an impartial judgment in the case and thus there was no need for him to answer differently. In any event, any shortcoming in the voir dire process was the result of the Court's failure to clarify the questions, rather than the juror's failure to provide an answer. There was no error.

■ Regardless of the juror's answers, his silence does not mandate the granting of a new trial. The Supreme Court of the United States has set forth a two-part test before a new trial may be granted: "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, ——, 104 S.Ct. 845, 850, 78 L.Ed.2d 663, 671 (1984). The Supreme Court has held the *McDonough* test to be an exception to the rule that "once the jury has heard the evidence and the case has been submitted, the litigants must accept the jury's collective judgment." *United States v. Powell*, 469 U.S. ——, ——, 105 S.Ct. 471, 478, 83 L.Ed.2d 461, 470 (1984). I find this case to be within the rule rather than the exception. Plaintiff has not made a sufficient showing by proper means of proof that the juror

---

\* THE COURT: Has anybody ever been employed by Burlington Northern Railroad?

A JUROR: I have just briefly. My grandfather was employed by them, and I worked for them for about three days.

THE COURT: You worked for three days.

A JUROR: Yeah.

THE COURT: How long was your grandfather employed by the railroad?

A JUROR: Twenty-three or four years. I don't know. He's on a pension from Burlington Northern.

THE COURT: What was his position with the railroad?

A JUROR: He was a switchman.

THE COURT: Is there anything at all in your background or your relationship with Burlington Northern that would prevent you from being a fair and impartial juror?

A JUROR: No, not that I can think of, no.

THE COURT: You think you could give both parties a fair trial.

A JUROR: Yeah, I think so.

THE COURT: When you left Burlington Northern, was it under a situation where there was any animosity on your part or did you leave voluntarily?

A JUROR: No, sir. I just worked on the cleanup crew cleaning up after a wreck.

THE COURT: Temporarily.

A JUROR: Right.

THE COURT: And so in your employment with the railroad, there was nothing that would cause any hard feelings between you and the railroad.

A JUROR: No, sir.

THE COURT: You feel that you could provide the same kind of impartial judgment of the facts in this case that you would like to have somebody provide in trying your case if you had one.

A JUROR: I think so.

THE COURT: Is there anyone else who has had any kind of a relationship at all with the parties, the railroad, any of the attorneys or do any of you know any of the witnesses, prospective witnesses who have been named?

\* \* \* \* \* \*

(At this point the juror against whom the allegations are directed was called and addressed by the Court)

THE COURT: Sir, let me ask you kind of a general question to begin with and that is you've been present here in the courtroom. You've heard the questions that have been asked. You've noted the responses or lack of responses from the other jurors. I'm going to ask, would your answers or non-answers to those questions have been the same as the other members here who did not respond?

JUROR: They would, sir.

THE COURT: Thank you.

failed to honestly answer a material question on voir dire. Thus, the second element of the *McDonough* test need not be considered.

There are two remaining questions. First, do the affidavits contain facts about which a juror may properly testify regarding the deliberation process? Second, are the affidavits properly before the Court? At the outset, I find that the subject matter of the affidavits is within the scope of the rule prohibiting inquiry into matters "inhering" in the jury process. Such matters include statements by a juror as to facts within his private knowledge, influence of a juror upon another juror, and consideration of improper or immaterial matter. *See,* 6A Moore's Fed.Prac. 59.08[4] at 59–138; *Mattox v. United States,* 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892); *United States v. Blackston,* 547 F.Supp. 1200 (S.D.Ga.1982); Rule 606(b), Fed.R.Evid. This testimony is inadmissible.

▮ Plaintiff's claim of juror misconduct may be disposed of entirely on the final question; the juror's affidavits are not properly before the Court and may not be considered in determination of the motion. Post-verdict interrogation of jurors is allowed by federal courts in only the most limited circumstances, and is never favored. A principal purpose of this rule is "[t]he prevention of fishing expeditions in search of information with which to impeach jury verdicts." *United States v. Davila,* 704 F.2d 749, 754 (5th Cir.1983).

The Court of Appeals for the Ninth Circuit strongly disfavors post-verdict juror interviews. In *Smith v. Cupp,* 457 F.2d 1098 (9th Cir.1972), the petitioner claimed constitutional prejudice by the trial court's refusal to allow interrogation of jurors for the purpose of discovering possible, but unspecified, jury misconduct. The court held:

> The contention lacks merit. In the federal court system, it has recently been stated that neither a trial court nor an appellate court has the authority to inquire into the jury's decisional processes, even when information pertaining to the delib-

erations is volunteered by one of the jurors. [Citation omitted]. Moreover, this court has held, in a federal case, that it is improper and unethical for lawyers to interview jurors to discover what was the course of deliberation of a trial jury. *Northern Pacific Railway Co. v. Mely,* 219 F.2d 199, 202 (9th Cir.1954).

*Smith v. Cupp, supra,* at 1100. Other circuits follow the same rule. For example, in *United States v. Gutman,* 725 F.2d 417 (7th Cir.1984), the defendant submitted post-trial affidavits from jurors who said they had heard media reports regarding the trial, including a report that the defendant's co-defendant had pleaded guilty. Rejecting defendant's motion for mistrial, the court cautioned that the practice of obtaining affidavits from jurors to impeach their verdict "is inherently intimidating,... and if it ever becomes widespread will make it even more difficult than it already is to get competent people to serve on juries." *Id.,* at 422. The court held that the district judge was not required to consider the affidavits in determination of the defendant's motion.

The Court of Appeals for the First Circuit chastised a United States Attorney who contacted a juror from the first trial (which ended in a mistrial) prior to commencement of the second trial.

> Permitting the unbridled interviewing of jurors could easily lead to their harassment, to the exploitation of their thought processes, and to diminished confidence in jury verdicts, as well as to unbalanced trial results depending unduly on the relative resources of the parties. [Citations omitted.] Such outcomes, or even the appearance of the same, we are not willing to tolerate. Thus, future incidents like the one described above will not be countenanced.

*United States v. Kepreos,* 759 F.2d 961, 967 (1st Cir.1985). *See also, United States v. Davila, supra,* 704 F.2d at 754; *United States v. Armstrong,* 654 F.2d 1328, 1333, n. 2 (9th Cir.1981).

▮ In short, the conduct of Plaintiff's counsel in taking it upon himself to interro-

gate the jurors in the hope of uncovering some unknown impropriety in their deliberations was inappropriate. Plaintiff did not seek leave to engage in this activity, and has made no showing that it was anything other than a fishing expedition. Accordingly, the affidavits of members of the jury are not properly before the Court, are inadmissible, and will receive no consideration.

As a final matter, Defendant has submitted objections to Plaintiff's proposed Bill of Costs. The Clerk has determined the costs to which Plaintiff is entitled and the amount taxed has been entered. This question is moot.

In light of the foregoing, I find no error for which a new trial should be granted.

THEREFORE Plaintiff's motion for new trial is DENIED.