Thomas J. HARD, Plaintiff-Appellant,

v.

BURLINGTON NORTHERN RAILROAD, Defendant-Appellee.

No. 85–4326.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 1, 1986 *.

Decided March 9, 1987.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 3(f) and Fed.R.App.P. 34(a).

Charles C. Dearden, Billings, Mont., for defendant-appellee.

Joseph P. Hennessey, Richard L. Webb, Jr., Walter M. Hennessey, Billings, Mont., for plaintiff-appellant.

Before BROWNING, and WRIGHT, Circuit Judges, and ORRICK,** Senior District Judge.

EUGENE A. WRIGHT, Circuit Judge:

Thomas Hard appeals from a jury verdict awarding him compensatory damages for injuries suffered while working for Burlington Northern. He urges that jury misconduct, an inadequate damage award, and a verdict against the weight of the evidence require a new trial. We remand to the district court for an evidentiary hearing on the issue of juror misconduct.

** Of the Northern District of California.

## BACKGROUND

While washing a locomotive for Burlington Northern, Hard slipped and fell on a concrete ramp. He allegedly sustained injuries to his arm, shoulder, neck, and back. He claimed that the slippery ramp was a result of Burlington Northern's negligence and brought an action under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, *et seq.* (1982). Burlington Northern argued that Hard's sprained wrist was a result of his own negligence, and that his other injuries resulted from his jumping out of a swing at a later date. The jury found Hard 50% negligent and awarded him $5,000.

After trial, Hard's attorney learned that juror Donald Fraser and his father were former employees of Burlington Northern or its predecessor, Northern Pacific Railroad. He moved for a new trial on grounds that Fraser concealed the identity of the former employer during voir dire and introduced extraneous and prejudicial information into the jury's deliberations. He presented the affidavits of three jurors stating that during deliberations Fraser made statements regarding Burlington Northern's settlement practices. The court refused to consider the affidavits, finding that they were excluded by Federal Rule of Evidence 606(b) and were the product of improper post-verdict interrogation. *Hard v. Burlington Northern R.R.*, 618 F.Supp. 1463, 1465–68 (D.Mont.1985). The court also refused to hold an evidentiary hearing. It then denied Hard's motion for a new trial. *Id.* at 1468.

## STANDARD OF REVIEW

■ This court reviews a denial of a motion for a new trial for abuse of discretion. *Robins v. Harum*, 773 F.2d 1004, 1006 (9th Cir.1985). This standard also applies to the court's procedural responses to claims of juror misconduct. *United States v. Soulard*, 730 F.2d 1292, 1305 (9th Cir. 1984); *United States v. Hendrix*, 549 F.2d 1225, 1227 (9th Cir.), *cert. denied*, 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977).

## ANALYSIS

### 1. *Juror Misconduct*

The court was faced with two allegations of juror misconduct. We analyze each separately.

### A. *Failure to Respond During Voir Dire*

■ Fraser was asked several questions during voir dire which were intended to reveal any prior contacts between Burlington Northern and himself. While the questions were not entirely free of ambiguity, they were reasonably calculated to require an affirmative response if Fraser had been employed by Burlington Northern. Fraser either failed to respond or answered in a manner which indicated that he had no significant prior contacts with Burlington Northern.[1] The district court held that Hard had failed to make a sufficient showing by proper means of proof that the juror failed to answer honestly. *Hard v. Burlington Northern R.R.*, 618 F.Supp. 1463, 1466–68 (D.Mont.1985). While we agree with the court that the reporter's transcript fails to demonstrate dishonesty by Fraser, when it is considered in light of the juror affidavits there exists a possibility of dishonesty which is sufficient to make the failure to have conducted an evidentiary hearing an abuse of discretion.

■ The district court, relying on Federal Rule of Evidence 606(b),[2] refused to con-

---

1. The following colloquy took place during voir dire:

> THE COURT: Has anybody ever been employed by Burlington Northern Railroad?
> A JUROR: I have just briefly. My grandfather was employed by them, and I worked for them for about three days.
>
> . . . .
>
> THE COURT: Is there anything at all in your background or your relationship with Burlington Northern that would prevent you from being a fair and impartial juror?
> A JUROR: No, not that I can think of, no.
> THE COURT: You think you could give both parties a fair trial?
> A JUROR: Yeah, I think so.
>
> . . . .
>
> THE COURT: And so in your employment with the railroad, there was nothing that would cause any hard feelings between you and the railroad?
> A JUROR: No, sir.
> THE COURT: You feel that you could provide the same kind of impartial judgment of the facts in this case that you would like to have somebody provide in trying your case if you had one?
> A JUROR: I think so.
> THE COURT: Is there anyone else who has had any kind of a relationship with the parties, the railroad, any of the attorneys or do any of you know any of the witnesses, prospective witnesses who have been named?
>
> * * * * * *
>
> (At this point, juror Fraser was called to the jury box and addressed by the Court.)
> THE COURT: Sir, let me ask you kind of a general question to begin with and that is you've been present here in the courtroom. You've heard the questions that have been asked. You've noted the responses or lack of responses from other jurors. I'm going to ask, would your answers or non-answers to those questions have been the same as the other members here who did not respond?
> JUROR: They would, sir.
> THE COURT: Thank you.
>
> * * * * * *
>
> THE COURT: Has anyone here ever had any dealing of any kind of Burlington Northern? Anybody ever send anything on their railroad, and as a result of that, have any good feelings or hard feelings? Has anybody ever traveled on the railroad, and for that reason, form some opinion about the railroad, good or bad?
> Folks, I have asked you all the questions that I can think about here, and what we're trying to do is just elicit from you any reason that one of you might not be able to be a fair and impartial juror.
> Now, in addition to all the questions that I have asked, do any of you think of anything else that might prevent one of you from being a fair juror? You'll take an oath to fairly and impartially determine the facts between the parties. Is there anyone who can't do that?
> Will counsel please come to the bench.
> (There was a brief discussion at the bench.)
> THE COURT: Let's see. Mr. Fraser, I neglected to ask you your occupation and whether you were married and your spouse's occupation if you have one.
> JUROR FRASER: My wife is Alto Fraser. We're both retired.
> THE COURT: You're both retired?
> JUROR FRASER: Right.
> THE COURT: I must have failed in a good cause then.

2. Federal Rule of Evidence 606(b) states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other ju-

sider the juror affidavits proffered by Hard's attorney. Statements which tend to show deceit during voir dire are not barred by that rule. *See Maldonado v. Missouri Pacific Ry. Co.,* 798 F.2d 764, 770 (5th Cir.1986); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 606[04] at 606–33. The district court could not properly exclude the affidavits on this ground.

It also refused to consider the affidavits because they resulted from post-verdict interviews with the jurors. While these interviews are not looked on favorably in this circuit, *see Traver v. Meshriy,* 627 F.2d 934, 941 (9th Cir.1980) (questioning jury about its internal deliberations or manner in which it arrived at its verdict should be discouraged); *Smith v. Cupp,* 457 F.2d 1098, 1100 (9th Cir.) (improper and unethical for lawyers to interview jurors to discover their course of deliberation), *cert. denied,* 409 U.S. 880, 93 S.Ct. 208, 34 L.Ed.2d 153 (1972), Ninth Circuit cases have often considered juror affidavits without discussing the propriety of post-verdict interviews, *see, e.g., United States v. Langford,* 802 F.2d 1176, 1180 (9th Cir.1986); *United States v. Marques,* 600 F.2d 742, 746 (9th Cir.1979), *cert. denied,* 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980). Since we had not joined other courts in holding that evidence acquired in post-verdict interviews conducted without leave of the court makes the evidence obtained inadmissible, the court could not refuse to consider the evidence on this ground.[3]

▮ While it is not always an abuse of discretion to fail to hold an evidentiary hearing when faced with allegations of juror misconduct, *see Langford,* 802 F.2d at 1180, it is preferable that a hearing be held, *id.; United States v. Halbert,* 712 F.2d 388, 389 (9th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984). A court is to be guided by the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source in determining whether a hearing must be held. *United States v. Hendrix,* 549 F.2d 1225, 1227–28 (9th Cir.1977) (citation omitted).

Considering these factors and the policy in favor of such hearings in light of the juror affidavits, the district court abused its discretion by not holding a hearing to investigate the allegation that Fraser failed to answer honestly a material question during voir dire. *See McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984).

The district court has the discretion to determine the extent and nature of the hearing. *Hendrix,* 549 F.2d at 1227. We hold only that a hearing must be held.

### B. *Introduction of Extraneous Evidence*

According to the affidavits, juror Fraser told other jurors about Burlington Northern's, or its predecessor's, settlement practices, including payment of injured employees' medical expenses. Hard argues that the introduction of these statements into jury deliberations requires that he be given a new trial. Since Hard seeks to impeach the jury's verdict, he has to once again overcome the hurdle posed by Federal Rule of Evidence 606(b). The district court ruled that he had not.

Federal Rule of Evidence 606(b) prohibits juror testimony about the deliberative process or subjective effects of the extraneous information. *Abatino v. United States,* 750 F.2d 1442, 1446 (9th Cir.1985). Juror

---

ror's mind or emotions as influencing him to assent or to dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be pre-

cluded from testifying be received for these purposes.

**3.** We believe the better practice is for the attorney to seek leave of the court to approach the jury. *See Maldonado v. Missouri Pacific Ry. Co.,* 798 F.2d 764, 769 (5th Cir.1986); *United States v. Kepreos,* 759 F.2d 961, 967 (1st Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985). *See generally ABA–BNA Lawyers' Manual on Professional Conduct* 71:107 (1984).

testimony is, however, admissible as to objective facts bearing on extraneous influences on the deliberation process. *Id.* Cases such as this normally raise no problem of extraneous influence.

▮ Jurors must rely on their past personal experiences when hearing a trial and deliberating on a verdict. Where, however, those experiences are related to the litigation, as they are here, they constitute extraneous evidence which may be used to impeach the jury's verdict. *See Maldonado,* 798 F.2d at 769–70; *Gov't of the Virgin Islands v. Gereau,* 523 F.2d 140, 150 (3d Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 606[04] at 606–30 (1985). Since Fraser's statements constitute evidence of extraneous influence, testimony as to their occurrence should not be barred by Federal Rule of Evidence 606(b). The court erred in ruling otherwise.

Hard must still establish that the error or defect in the proceedings affected the substantial rights of the parties to be entitled to a new trial. *Benna v. Reeder Flying Service, Inc.,* 578 F.2d 269, 271 (9th Cir.1978); Fed.R.Civ.P. 61. *But cf. Haley v. Blue Ridge Transfer Co., Inc.,* 802 F.2d 1532, 1535 (4th Cir.1986) (reasonable possibility of affecting the verdict). The information contained in the affidavits is significant enough to make appropriate a hearing to determine whether or not Hard can establish the need for a new trial. The district court abused its discretion by not holding such a hearing.

## II. *Inadequate Damages*

Hard argues that he should have a new trial because the jury's damage award was grossly inadequate. The jury determined damages to be $10,000, but awarded Hard only $5,000 because it found him 50% negligent. The issue is not whether this court finds damages low, but whether the district court abused its discretion in not granting a new trial. *Berns v. Pan American World Airways, Inc.,* 667 F.2d 826, 831 (9th Cir.1982) (citation omitted). The appellant bears a substantial burden when attempting to prevail on this ground. *Id.*

Here, the amount of damages depended greatly on whether the jury chose to believe Hard's evidence or Burlington Northern's. The jury apparently chose to believe the latter. That being the case, the court did not abuse its discretion in denying the motion for a new trial.

## III. *Verdict Against the Weight of the Evidence*

▮ Hard also argues that he is entitled to a new trial because the verdict is against the weight of the medical evidence. We will not disturb the jury verdict unless, viewing the evidence in the manner most favorable to the prevailing party, we can say that the court abused its discretion. *Traver v. Meshriy,* 627 F.2d 934, 940 (9th Cir.1980) (citations omitted).

The jury heard testimony from four medical experts. The evidence conflicted as to the cause and extent of Hard's injuries. The evidence did not clearly weigh in Hard's favor. There was no abuse of discretion.

REVERSED and REMANDED.